NO. 07-02-0138-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JUNE 27, 2003

_____


KODY KOTHMANN, APPELLANT

V.

CLINT COOK, APPELLEE

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 93-543,094; HONORABLE SAM MEDINA, JUDGE

_____

Before REAVIS and CAMPBELL, JJ., and BOYD, S.J.[1]


**OPINION**


This is an appeal from a take-nothing summary judgment dismissing appellant Kody

Kothmann's (Kothmann) breach of fiduciary suit against appellee Clint Cook (Cook).  In

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.  Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

pursuing the appeal, Kothmann presents four issues for our decision. All of those issues are related to the question of whether the matters involved in a May 13, 1993 hearing before the Hays County District Court and Kothmann's presence at that hearing were sufficient to entitle Cook to the summary judgment on the basis of *res judicata*. We reverse the judgment of the trial court.

History

The suit underlying this appeal has been before this court previously and its history is set out in some detail in this court's opinion in *Scanio v. McFall*, 877 S.W.2d 888 (Tex.App.–Amarillo 1994, no writ). Kothmann was formerly married to Elizabeth Tuttle. That marriage was dissolved in Lubbock County in 1988. In the decree dissolving the marriage, the trial court divided the community property, appointed Tuttle managing conservator of the parties' two minor children and ordered Kothmann to make child support payments for their benefit. Subsequently, Kothmann filed a motion to modify the divorce decree in that court. In response to that motion, Tuttle filed a motion to transfer the case to Hays County, where she and the children were residing at the time. The case was transferred to the 274th District Court of Hays County where it was presided over by Judge Linda Rodriquez.

On April 30, 1992, Judge Rodriquez ordered Kothmann to pay child support and half of all health care expenses incurred by or on behalf of the couple's minor children. Kothmann made the payments as ordered for several months, but failed to make the full

payments during the last three months of 1992. As a result of that failure, Tuttle filed a motion to enforce the court's order. On February 25, 1993, after a hearing on Tuttle's motion, the court held Kothmann in contempt for his failure to pay child support and medical expenses. Cook represented Kothmann in the motion to modify child support and the contempt motion. At the time of the hearing, Kothmann had paid all of the past due child support and all but $13.94 of the medical expenses. Kothmann was ordered confined for 179 months in the Hays County Jail, but the commitment was suspended and he was placed on probation for 36 months. Terms of Kothmann's probation included his 1) continuing to pay $1,092 per month in child support; 2) continuing to pay 50% of the health care expenses of his children; 3) paying $9,089.75 in attorney's fees to Tuttle in 12 monthly installments of $757.48; and 4) purchasing health insurance for the children within 30 days of the court order.

Kothmann failed to pay his monthly installments for attorney's fees in April and May of 1993 and failed to obtain health insurance as ordered. Because of that failure, Tuttle filed a motion to revoke the suspension of Kothmann's jail commitment. The trial court set that motion for hearing on May 13, 1993, and issued a *capias* directing Kothmann be brought before the court to show cause for his failure to comply with the terms and conditions of his probation. Additionally, the court entered a turnover order by which Paul Titzell, an agent of Shearson Lehman Brothers, was directed to turn over to the Lubbock County Sheriff's Department "[a]ny and all cash, stock certificates, bonds or other securities" held in the name of, or for the benefit of Kothmann. Kothmann was also

directed to appear with all stock certificates in which he owned an interest other than those subject to the control of Titzell, as well as any proceeds resulting from the sale of such stock.

Although the plea is not included in the record, it seems to be uncontested that Cook filed a plea of intervention on behalf of his law firm, Ward, Freels & Cook, L.L.P., in which he sought possession of the items to be turned over to the Lubbock County Sheriff's Office to the extent of the attorneys' interest in those items. Cook averred that Kothmann owed at least $5,993.03 in attorney fees and had executed a security agreement giving the attorneys a secured interest in certain of the stock held by Shearson Lehman Brothers.

On May 10, 1993, Kothmann was arrested in Lubbock and placed in the county jail. At the May 13, 1993 hearing in Hays County, the court heard evidence and arguments concerning the proper disposition of $9,712.82 obtained from Kothmann's Shearson Lehman Brothers account. Kothmann appeared at the hearing, but was not represented by an attorney. Cook appeared on behalf of his law firm and emphasized that fact. On May 14, 1993, the court issued an order entitled "Order Aiding in Satisfaction of Judgment," in which it found that Cook's law firm was entitled to $5,993.03 pursuant to its security agreement with Kothmann and that Tuttle was entitled to the remaining $3,719.79 in partial satisfaction of the prior judgments against Kothmann for attorney fees incurred by Tuttle. The court also found that Tuttle was to recover $1199 in additional attorney fees from Kothmann.

The May 13 hearing did not address the motion to revoke the suspension of Kothmann's commitment and a hearing was scheduled on those matters for June 10, 1993. It appears that no such hearing was ever held. On June 8, 1993, Kothmann, now represented by counsel, filed the suit underlying this appeal in Lubbock County against Cook, Michael Scanio (Tuttle's attorney), Judge Rodriquez and Tuttle. Apparently, no further action has been taken in Hays County on matters pending in that county.

We are now only concerned with the suit insofar as it affected Cook. In his fourth amended original petition, Kothmann made claims against Cook for alleged breach of fiduciary duty and violations of the Deceptive Trade Practices Act. On May 11, 2000, Cook filed his motion for summary judgment on the basis that Kothmann's claims were in the nature of compulsory counterclaims to Cook's quest for attorney fees and because they were not raised at the May 13, 1993 hearing, they are barred by *res judicata.*

Discussion

To prevail on a motion for summary judgment, a movant must establish there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A defendant who conclusively negates at least one of the essential elements of a cause of action is entitled to summary judgment as to that cause. *Randall's Food Markets., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Likewise, a defendant who conclusively establishes each element of an affirmative defense is entitled to summary judgment. *Id*. In reviewing a summary judgment, we must accept as true

5

evidence in favor of the non-movant, indulging every reasonable inference and resolving all doubts in his or her favor. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 315 (Tex. 1987).

*Res judicata* is an affirmative defense. Tex. R. Civ. P. 94. It is the generic term for a group of related concepts concerning effects given final judgments. *Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 679 (Tex. 1982). Within the general doctrine of *res judicata* there are two principal categories: 1) claim preclusion (also specifically known as *res judicata);* and 2) issue preclusion (also known as collateral estoppel). *Res judicata*, or claim preclusion, prevents the litigation of a claim or cause of action that has been finally adjudicated, as well as related matters that with the exercise of reasonable diligence, could have been litigated in the prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). Thus, it is not limited to matters actually litigated in the prior suit, but also precludes causes of action or defenses that arise out of the same subject matter and which might have been litigated in the prior suit. *Id.* at 630.

A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation. It requires an analysis of the factual matters that make up the gist of the complaint without regard to the form of the litigation, and any cause of action which arises out of the same facts should, if practicable, be litigated in the same lawsuit. *Id.* at 630 (citing *Texas Water Rights Comm. v. Crow Iron Works*, 582 S.W.2d 768, 772 (Tex. 1979)). The definition of

6

*res judicata* contained in the foregoing cases is substantially similar to the rule of compulsory counterclaims embodied in the rules.  Tex. R. Civ. P. 97.

Thus, to sustain the summary judgment, the record must conclusively establish that at the time of the May 13, 1993 hearing, Kothmann's claims must 1) have been within the jurisdiction of the court; 2) not subject to a pending action at the time of the May 13, 1993 hearing; 3) have been mature and owned by Kothmann at the time of the hearing; 4) have arisen out of the transaction or occurrence that was the subject matter of Cook's claim; 5) have been against Cook in the same capacity; and 6) did not involve the presence of third parties over whom the court cannot acquire jurisdiction. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1988).

In relevant part, the Texas turnover statute provides:

(a) A **judgment creditor** is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the **judgment debtor** owns property, including present or future rights to property, that:

   (1) cannot readily be attached or levied on by ordinary legal process;

                    *    *    *

(b) The court may:

   (1) order the **judgment debtor** to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control . . .

                    *    *    *

(d) The **judgment creditor** may move for the court's assistance under this section in the same proceeding in which the judgment is rendered or in an independent proceeding . . . .

7

Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (Vernon Supp. 2003) (emphasis added).

The turnover statute was enacted to expand procedures by which diligent judgment creditors could reach the property of their judgment debtors. *Cross, Kieschnick & Co. v. Johnston*, 892 S.W.2d 435, 438 (Tex.App.–San Antonio 1994, no writ). As such, it is purely procedural in nature and does not provide for the determination of the substantive rights of the parties. *Republic Ins. Co. v. Millard*, 825 S.W.2d 780, 783 (Tex.App.–Houston [14th Dist.] 1992, no writ); *Cravens, Dargan & Co. v. Peyton L. Travers Co.*, 770 S.W.2d 573, 576 (Tex. App.--Houston [1st Dist.] 1989, writ denied). It does not create a right in the judgment creditors and debtors to initiate and incorporate in the proceedings an entirely different law suit against a third party who is not a part of the original judgment. *Republic*, 825 S.W.2d at 783.

Because it is dispositive of this appeal, we proceed directly to consider his third issue. In that issue, Kothmann asserts that Cook failed to conclusively prove that the current case is based on claims that were or should have been raised at the May 13, 1993 hearing. Because of the special and limited nature of the turnover proceeding, Kothmann would not have been entitled to raise those substantive claims against Cook had he attempted to do so. That being so, Kothmann's failure to raise such matters at the time of the May 13, 1993 hearing was not sufficient to entitle Cook to claim *res judicata* barring the pursuit of this suit.

Kothmann's third issue is sustained. Because that sustention requires a reversal of the trial court's judgment, it obviates the necessity for discussion of the remainder of Kothmann's issues. Accordingly, the judgment of the trial court is reversed and the cause remanded to the trial court.

John T. Boyd
Senior Justice